UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

BRIAN DAVIS,                                    :

                    Petitioner,                 :

      -against-                                 :        **REPORT and RECOMMENDATION**

CHRISTOPHER ARTUZ,                              :        00 Civ. 2874 (RCC)(KNF)

                    Respondent.                 :
-------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD C. CASEY, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Before the Court is Brian Davis' ("Davis") *pro se* petition for a writ of habeas corpus,

made pursuant to 28 U.S.C. § 2254. Davis contends that his confinement by New York state is

unlawful because: (1) his constitutional right to due process of law was violated when the trial

court denied his motion to dismiss the grand jury indictment on the ground that it was obtained

through the presentation of false testimony; (2) his right to due process was violated when the

prosecution knowingly presented false evidence at trial; (3) the trial court admitted prejudicial,

irrelevant testimony improperly, thereby denying him due process; (4) the trial court admitted

into evidence, improperly, certain statements which were inadmissible under the hearsay rule and

thereby violated his Sixth Amendment right of confrontation; (5) the trial evidence was

insufficient to support his conviction for murder in the second degree; and (6) the prosecutor

engaged in misconduct, thereby violating Davis' right to due process of law.

## II. BACKGROUND

On September 9, 1991, Davis and an associate, Rasheed Lawton ("Lawton"), traveled to West 146th Street and Amsterdam Avenue in Manhattan where they met Novan Harris ("Harris"), a neighborhood drug dealer, who allegedly sold drugs for Davis. Davis, Lawton and Harris walked together to an alley leading from West 146th Street to West 147th Street, entered the alley briefly and then exited. Harris began to walk away, but returned to the alley after Davis gestured to him. Gunshots rang out and a witness, Jacob Simmons ("Simmons"), who later testified at trial, stated that, when he looked into the alley, he saw sparks from a gun where Davis and Lawton were standing. An emergency medical service technician, responding to a call about a shooting at that location, found Harris lying in the alleyway with gunshot wounds to his head. He was taken to a hospital and died about twelve hours later.

A second witness, Edward Alexander ("Alexander"), testified at trial that he saw Davis and Lawton near the alley about an hour after the shooting. According to Alexander, who had been in a nearby schoolyard at the time of the shooting, Davis spoke to a man known only as "Hotdog." Alexander testified that, after Davis and Lawton gave Hotdog a sum of money, Hotdog walked to a trash receptacle from which he retrieved a plastic bag containing what appeared to be a gun. Alexander stated that Hotdog gave the bag to Davis, who then left the area with Lawton. On cross examination, Alexander acknowledged that he did not actually see a gun but, rather, the shape of a gun in the plastic bag. Lawton was arrested six months after the shooting. Two and half years after the shooting, based on information provided by Lawton and others, Davis was arrested for the murder of Harris.

2

On September 7, 1994, a New York County grand jury filed an indictment charging Davis with one count of murder in the second degree. Davis made a motion to have identification evidence suppressed at his trial. The motion was denied after a hearing. On March 17, 1995, Davis was convicted for murder in the second degree, after a jury trial in the New York State Supreme Court, New York County, and sentenced to an indeterminate term of imprisonment of twenty-five years to life. Thereafter, Davis appealed his conviction to the New York State Supreme Court, Appellate Division, First Department. On December 22, 1998, petitioner's conviction was affirmed unanimously. See People v. Davis, 256 A.D.2d 200, 683 N.Y.S.2d 502 (App. Div. 1st Dep't 1998). Petitioner made an application for leave to appeal to the New York Court of Appeals. It was denied on April 6, 1999. See People v. Davis, 93 N.Y.2d 898, 689 N.Y.S.2d 710 (1999).

Davis filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in March 2000.[1] Davis then moved to stay his habeas corpus petition pending adjudication in the relevant state courts of a motion, made pursuant to New York Criminal Procedure Law ("CPL") § 440.10, to vacate the judgment of conviction. In addition, Davis sought to amend his petition to add the claim presented in his CPL § 440.10 motion. The assigned district judge, adopting the Court's recommendation, granted Davis' motions to stay and amend his petition. Thereafter, Davis filed timely an amended petition for a writ of habeas corpus. Later, Davis requested another stay of his petition pending the resolution of motions he had made in the relevant state courts that he be

---

[1] On November 9, 2000, after filing his application for habeas corpus relief, Davis petitioned the Appellate Division for a writ of error *coram nobis*. The Appellate Division denied the petition on June 21, 2001. See People v. Davis, 284 A.D.2d 1022, 728 N.Y.S.2d 114 (App. Div. 1st Dep't 2001).

allowed to renew his application for a writ of error *coram nobis* and his CPL § 440.10 motion. That request was denied.

## III. DISCUSSION

*Standard of Review*

Where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, 28 U.S.C. § 2254 informs that a writ of habeas corpus may issue only if the state court's adjudication resulted in a decision that: 1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. See 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000); Francis S. v. Stone, 221 F.3d 100 (2d Cir. 2000). In addition, when considering an application for a writ of habeas corpus by a state prisoner, a federal court must be mindful that any determination of a factual issue made by a state court is to be presumed correct and the habeas corpus applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

*Claim One: Grand Jury Testimony*

Davis contends that his constitutional right to due process was violated when the trial court denied his motion to dismiss the grand jury indictment against him on the ground that it was obtained through the presentation of false testimony. Specifically, the petitioner argues that the Appellate Division's decision with respect to this branch of petitioner's appeal from his conviction was contrary to and an unreasonable application of pertinent Supreme Court case law.

4

Among those who testified before the grand jury in petitioner's case were Simmons and Alexander. Simmons testified, pursuant to a cooperation agreement he made with the prosecutor, that he had heard petitioner and two other people arguing and had seen petitioner fire a gun. Alexander testified, also pursuant to a cooperation agreement he reached with the prosecutor, that either petitioner or Lawton called Harris to the schoolyard adjacent to the alleyway between West 146th and West 147th Streets, and that petitioner used a gun to shoot Harris twice.

Both Simmons and Alexander also testified at trial, but their trial testimony differed from their testimony before the grand jury. Simmons testified at trial that he did not see the shooting and did not see petitioner with a gun. Alexander testified that he was high on crack cocaine when he saw petitioner and Lawton enter the schoolyard, that he heard someone call to Harris and that he then heard shots. However, in contrast to his grand jury testimony, Alexander stated at trial that he did not see who did the shooting and did not see anyone with a gun.

After Simmons had given his testimony at trial, the trial court noted that there had been "substantial perjury" by him during the grand jury proceedings. The prosecution acknowledged that Simmons' trial testimony was inconsistent with his grand jury testimony, but claimed to have been unaware until the trial that Simmons' testimony would differ. The prosecution also suggested that Simmons' grand jury testimony had been truthful and that Simmons had denied knowing who the shooter was at trial only because he had been intimidated by the sight of the defendant. The trial court recommended that Simmons' perjury be considered with respect to his cooperation agreement but did not dismiss the indictment. Regarding Alexander, the prosecution admitted in advance that his trial testimony would differ substantially from his testimony before the grand jury and that the prosecution knew about the inconsistency two weeks before trial. At

5

the conclusion of trial, the defense moved to dismiss the indictment, arguing that it was based on perjured testimony. The trial court denied the motion.

The Appellate Division addressed this issue in its decision affirming the conviction. The court stated:

> The trial court properly denied defendant's motion for dismissal of the indictment made on the ground that it was based on perjured testimony. Although the prosecutor advised defendant and the court of his belief that one witness had offered perjured testimony before the Grand Jury, the record indicates that there was additional, apparently competent evidence before the Grand Jury to support the indictment. . . . Further, even though the reliability of the apparently competent testimony before the Grand Jury was also challenged at the time a particular Grand Jury witness testified at trial, there was no indication that this witness had testified falsely before the Grand Jury. Defendant's claim that his motion to dismiss the indictment should have been granted for lack of sufficient evidence is barred because the judgment of conviction was based upon legally sufficient evidence adduced at trial.

Davis, 256 A.D.2d at 201, 683 N.Y.S.2d at 503 (citations omitted).

In a petition for habeas corpus relief, a claim alleging a deficiency in a grand jury proceeding is governed by the Supreme Court's holding in United States v. Mechanik, 475 U.S. 66, 106 S. Ct. 938 (1986). In Mechanik, the Supreme Court found that a petit jury's guilty verdict meant "not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." 475 U.S. at 70, 106 S. Ct. at 941-42. Hence, "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." Id. The Second Circuit Court of Appeals has interpreted the Supreme Court's holding in Mechanik to mean that claims of deficiencies in a state grand jury proceeding are not cognizable on habeas corpus review. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989)("[C]laims concerning a state grand jury

6

proceeding are . . . foreclosed in a collateral attack brought in federal court."); see also Reid v. Phillips, No. 04 Civ. 1338, 2004 WL 1920218, at *4 (S.D.N.Y. 2004)(citing Lopez, 865 F.2d at 32)("[A] petit jury's guilty verdict renders any errors by the grand jury harmless and prevents a defective indictment from providing a basis for habeas relief."). Consequently, regardless of whether the indictment in this case was defective, the petitioner's request for a writ of habeas corpus on this ground should be denied. Moreover, the petitioner has not demonstrated that the Appellate Division's decision with respect to this claim was contrary to or an unreasonable application of the governing legal standard as set forth in Mechanik; in denying the claim on appeal, the court found, *inter alia*, that the judgment of conviction was based on legally sufficient evidence adduced at trial. Nor has petitioner overcome the presumption of correctness accorded the state court's determination of the facts in light of the evidence. Therefore, petitioner is not entitled to habeas corpus relief on this claim.

*Claim Two: Trial Testimony*

Davis contends that his constitutional right to due process was violated when the prosecution knowingly elicited false testimony from Simmons at trial. In addition, Davis argues, even if Simmons' false testimony was offered without the prosecution's knowledge, habeas corpus relief is still warranted because there is a reasonable likelihood that Simmons' testimony contributed to the verdict.

This claim was presented to the trial court by way of petitioner's CPL § 440.10 motion to vacate the judgment of conviction, and to this court as part of his amended habeas corpus petition. The respondent contends that the claim is unexhausted but should be deemed exhausted and procedurally defaulted. Regardless of whether Davis is procedurally barred from seeking

7

habeas relief on this ground, the Court reaches the merits of the claim in order to deny it. See 28 U.S.C. § 2254(b)(2).

In presenting this claim to the trial court, the petitioner submitted, among other things: (1) the affidavit of Leon Martin ("Martin"), whose relationship to the petitioner was undisclosed; and (2) the affirmation of Richard M. Greenberg ("Greenberg"), an affiliate, at all relevant times, of the Office of the Appellate Defender, which represented Davis on appeal from his conviction. In his affidavit, dated February 6, 2001, Martin stated that he had a conversation with Simmons in February 1999 about Simmons' grand jury and trial testimony in the instant case. Martin averred that Simmons told him that all of his testimony incriminating Davis was perjurious, and that he had testified falsely because he wanted to get out of jail. According to Martin, Simmons also said that he had been pressured by the police and prosecutors to testify falsely against Davis.

Greenberg's affirmation is dated June 28, 2001. According to Greenberg, in the summer of 1999, Simmons told him that he had not testified truthfully at Davis' trial, "that he had not seen what he testified he had seen; and that he testified the way that he did because he had been pressured by police and prosecutors." Greenberg averred that Simmons declined to sign an affidavit recounting what he had said, out of fear of a perjury prosecution, but had agreed to see Greenberg again once the applicable statute of limitations had run. Greenberg indicates that he did not see Simmons again.

"A state court adjudicates a petitioner's federal claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005)(quoting Norde v. Keane, 294 F.3d 401, 410 [2d Cir. 2002]) (internal quotation marks omitted). Here, the trial court denied petitioner's CPL § 440.10 motion

8

to vacate the judgment of conviction, finding that: (a) petitioner's "newly discovered evidence," being hearsay and completely unsubstantiated, did not give rise to a vacatur of the judgment or a hearing to investigate the allegations; and (b) petitioner's failure to identify Simmons' alleged false statements with specificity, or to provide support for Simmons' allegation that he was subject to pressure by the police and prosecutors, rendered petitioner's claim of prosecutorial misconduct unfounded. Thereafter, the Appellate Division denied petitioner's application for permission to appeal, stating that there was no question of law or fact presented which necessitated review by the court. Since the petitioner's motion was adjudicated on the merits, he is entitled to habeas corpus relief only if he can establish that the trial court's decision was neither contrary to nor an unreasonable application of clearly established Federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence.

The Supreme Court has held that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must he set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Jenkins v. Artuz, 294 F.3d 284, 293 (2d Cir. 2002)(quoting United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392 [1976])(internal quotation marks omitted). Where the prosecution was unaware of the perjury, "a new trial is warranted only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991)(quoting Sanders v. Sullivan, 863 F.2d 218, 226 [2d Cir. 1988])(internal quotation marks omitted).

9

In his application for habeas corpus relief, the petitioner relies on, *inter alia*, the Martin and Greenberg documents to support his claim that Simmons testified falsely at trial and the prosecution used that testimony knowingly. However, as the trial court found, the evidence presented by way of those documents was insufficient to support the petitioner's claim that Simmons actually committed perjury. In the absence of such a showing, Davis cannot establish a due process violation. See McCarthy v. United States, No. 02 Civ. 9082, 2004 WL 1535577, at *2 (S.D.N.Y. July 9, 2004)(finding that a showing that a witness actually committed perjury was "essential to establishment of a due process violation").

As noted previously, Simmons refused to sign an affidavit at the time that he met with Greenberg, and never came forward to provide sworn testimony in support of the alleged claims of perjury. Moreover, although Simmons' trial testimony differed from his grand jury testimony, it is unclear which of the two versions of what happened on the night of the shooting was false, or whether there was yet a third version of the facts. See McCarthy, 2004 WL 1535577, at *2 (noting that inconsistency or even direct conflict in testimony does not by itself constitute perjury). Furthermore, Simmons' claim that his testimony was the result of pressure by the police or prosecutors is wholly conclusory and lacking in factual support.

Since the petitioner's newly discovered evidence does not establish that Simmons testified falsely at trial, there is no basis upon which the Court may conclude that perjured testimony, knowingly presented by the prosecution, affected the judgment of the jury. Similarly, even in the absence of an allegation of prosecutorial misconduct, the Court has no basis for finding that, "but for the perjured testimony," Davis would not have been convicted. Therefore, under the circumstances, Davis has not demonstrated that the trial court's decision was contrary

10

to or unreasonably applied the Supreme Court's rule concerning the introduction of perjured testimony at trial or that it was based on an unreasonable determination of the facts in this case. Accordingly, he is not entitled to habeas corpus relief on this claim.[2]

*Claim Three: Prejudicial Evidence*

Davis contends that testimony presented at trial concerning his possession of a bag containing a gun was irrelevant, highly prejudicial and speculative. As a consequence, Davis argues, the admission by the trial court of this evidence was improper and violated his constitutional right to due process. The respondent maintains that this claim is unexhausted but should be deemed exhausted and procedurally barred because, in presenting the claim on direct appeal, Davis relied entirely upon state evidentiary law.

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971). This requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. at 731, 111 S. Ct. at 2254.

To satisfy the exhaustion requirement, a habeas corpus petitioner must meet a two-pronged test. First, the petitioner must "fairly present" his or her federal claim to the highest state court from which a decision can be rendered. Daye v. Attorney Gen. of New York, 696 F.2d

---

[2]In his amended habeas corpus petition, Davis presents a claim of actual innocence premised on the "newly discovered evidence" concerning Simmons' allegedly perjurious testimony, described above. Davis asserts that, in light of his actual innocence of the crime for which he was convicted, he has overcome the respondent's contention that certain claims presented in the petition are procedurally defaulted. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991). For the reasons discussed above, Davis' actual innocence claim is meritless and should be denied.

11

186, 190-91 n.3 (2d Cir. 1982)(en banc). A claim is "fairly presented" if the state courts are informed of "both the factual and the legal premises of the claim [asserted] in federal court." Id. at 191. Secondly, "having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure state [appellate] review of the denial of that claim." Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)(citations omitted).

A state defendant may alert a state court to the federal constitutional nature of his claim in a number of ways, including:

(a) reliance on pertinent federal cases employing constitutional analysis,
(b) reliance on state cases employing constitutional analysis in like fact situations,
(c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194.

In this case, petitioner has satisfied both elements of the exhaustion requirement with respect to his claim that the admission of prejudicial evidence at trial violated his right to due process. Petitioner "fairly presented" the factual and legal premises of the claim to the appropriate state court by relying on pertinent Second Circuit case law – Dunnigan v. Keane, 137 F.3d 117 (2d Cir. 1998)[3] – in the relevant portion of his appellate brief. Thus, petitioner's appellate brief adequately apprised the intermediate state appellate court of the constitutional nature of his claim.

_____   _____

[3] In Dunnigan, the court addressed the question whether a trial court's erroneous admission of prejudicial evidence amounted to a denial of due process warranting a grant of the petitioner's application for habeas corpus relief. See id. at 125-27.

12

Additionally, petitioner raised his claim in the highest court in the state in such a way as to implicate a federal constitutional issue. The Second Circuit has held that attaching an appellate brief to a letter application for leave to appeal constitutes fair presentation for purposes of the exhaustion requirement where the "leave application reasonably could be construed only as a request for further appellate review of all issues in the attached briefs" and "[n]othing in the certificate denying leave to appeal suggests that [petitioner's] application was denied for lack of specificity or any other procedural reason." Galdamez v. Keane, 394 F.3d 68, 76-77 (2d Cir. 2005); cf. Jordan v. Lefevre, 206 F.3d 196, 198 (2d Cir. 2000); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Moreover, the exhaustion requirement also is satisfied where a leave application, while not specifying any particular issue for review, asks the Court to consider and review all the issues outlined in an attached appellate brief. See Morgan v. Bennett, 204 F.3d 360, 371 (2d Cir. 2000).

Here, Davis attached his Appellate Division brief to a preliminary leave application to the New York Court of Appeals. Thereafter, in a supplemental letter submitted to the court, petitioner argued all the claims previously raised by him in his brief, including the claim that the trial court's admission of prejudicial testimony violated his right to due process. Thus, petitioner's brief "fairly presented" the constitutional issue implicated by this claim; moreover, nothing in the New York Court of Appeals' certificate denying leave to appeal indicated that the application was denied for a procedural reason. Therefore, petitioner's claim is exhausted.

The Appellate Division addressed petitioner's claim concerning the admission of prejudicial evidence on the merits, finding that "[t]he trial court appropriately exercised its discretion in permitting testimony regarding observation of [the petitioner] in the vicinity of the

13

shooting within an hour thereafter, in possession of a bag showing the outline of a gun of a type consistent with the ballistics evidence." Davis, 256 A.D.2d at 200-201, 683 N.Y.S.2d at 503 (citation omitted). Since this claim was adjudicated on the merits, it is incumbent upon Davis to establish that the decision reached by the Appellate Division was either contrary to or an unreasonable application of federal law as enunciated by the Supreme Court, or grounded in an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Davis has done neither. Since Davis has not met the burden placed upon him by 28 U.S.C. § 2254(d), he is not entitled to habeas corpus relief based on this claim.

## Claim Four:  Right to Confront Witnesses

Davis claims that the admission at trial of certain hearsay statements made by the murder victim violated the Confrontation Clause of the Sixth Amendment to the Constitution. Specifically, Davis argues that his right to confront the witnesses against him was violated when the trial court improperly admitted hearsay testimony by Harris' brother, Duwayne Harris, concerning statements allegedly made by Harris on the night of his murder, *to wit*:  that there was trouble in his drug organization over missing drugs and equipment.  The prosecution offered Duwayne Harris' testimony into evidence under the declaration against penal interest and state of mind exceptions to the hearsay rule.  The trial court admitted the statements, over defense objection, presumably as non-hearsay, for the sole purpose of showing Harris' state of mind on the night he was murdered.  See Smith v. Duncan, 411 F.3d 340, 347 n.4 (2d Cir. 2005)(noting the distinction between offering evidence under the state of mind exception to the hearsay rule for the truth of the matter asserted, and offering it for a non-hearsay purpose, *e.g.*, to show the declarant's state of mind).  Despite this restriction, Davis contends, the prosecution misused

14

Duwayne Harris' statements during summation by arguing the truth of them and offering them as evidence of motive. The admission of this hearsay testimony, Davis contends, was improper and violated his constitutional right of confrontation.

As noted previously, a state court adjudicates a petitioner's federal claim on the merits when it disposes of the claim on the merits and reduces its disposition to judgment. See Howard, 406 F.3d at 122. Moreover, "[a] claim need not be addressed in detail by a state court to have been 'adjudicated on the merits.'" Id. Here, with respect to the instant claim, the Appellate Division stated: "We have reviewed [the petitioner's] remaining contentions and find that they do not warrant reversal." Davis, 256 A.D.2d at 202, 683 N.Y.S.2d at 504. Hence, petitioner's claim was adjudicated on the merits.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI. "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." Ryan v. Miller, 303 F.3d 231, 247 (2d Cir. 2002).

The right of the accused to confront the witnesses against him is "intertwined with but [] separate from the rules prohibiting hearsay testimony." Id. (citing Ohio v. Roberts, 448 U.S. 56, 62, 100 S. Ct. 2531 [1980]). In Roberts, the Supreme Court stated that the Confrontation Clause "was intended to exclude some hearsay," but "countenances [] hearsay marked with such trustworthiness that there is no material departure from the reason of the general rule." 448 U.S. at 63-65, 100 S. Ct. at 2537-2538. "Reliability can be inferred . . . where the evidence falls within a firmly rooted hearsay exception" or may be established through "a showing of

15

particularized guarantees of trustworthiness." Id. at 66, 100 S. Ct. 2539.[4]

Since petitioner's Sixth Amendment claim was adjudicated on the merits, he must show that the decision of the Appellate Division concerning this claim failed to satisfy the deferential standard set forth at 28 U.S.C. § 2254(d)(1). However, Davis has not established that the Appellate Division, in its decision, applied a rule that was contrary to, or involved an unreasonable application of, the governing law as set forth in Roberts. See Serrano v. Fischer, 412 F.3d 292, 297 (2d Cir. 2005)(noting that where state court summarily rejects claim on the merits without explanation, habeas court must focus on state court's ultimate decision, rather than its reasoning). Moreover, Davis has not shown that the Appellate Division's decision was grounded in an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, since Davis has not met the statutory burden placed upon him with respect to the instant claim, the claim should be denied.

*Claim Five: Sufficiency of the Trial Evidence*

Davis contends that the evidence adduced at trial was insufficient to support his conviction for murder in the second degree. According to Davis, none of the prosecution's witnesses actually saw him with a gun; moreover, the witnesses who testified to having seen Davis with Harris and Lawton before the shooting were unreliable. Additionally, Davis

---

[4]The Supreme Court "reconceived much of [its] Confrontation Clause jurisprudence" in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). Mungo v. Duncan, 393 F.3d 327, 331 (2d Cir. 2004). In Crawford, the Court established a *"per se* bar on the admission of out-of-court testimonial statements made by unavailable declarants where there was no prior opportunity for cross-examination." United States v. McClain, 377 F.3d 219, 221 (2d Cir. 2004). However, Crawford does not overrule Roberts with respect to non-testimonial statements. See McClain 377 F.3d at 221 n.1. Moreover, the Second Circuit has determined that Crawford cannot be applied retroactively on collateral review. See Mungo, 393 F.3d at 334-35.

16

maintains, Lawton, who was also in the alley at the time of the shooting and was arrested for the murder six months later, easily could have been the shooter. Consequently, Davis argues, the evidence at trial failed to prove his guilt beyond a reasonable doubt.

A habeas corpus petitioner challenging the lawfulness of his or her incarceration based upon a claim of insufficient evidence is entitled to relief only if a court finds upon the record evidence adduced at trial that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-2792 (1979). A habeas corpus court reviewing such a claim must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor. See id. at 319, 2789.

New York's Penal Law explains that a person is guilty of murder in the second degree when:

> With intent to cause the death of another person, he causes the death of such person or of a third person . . . .

N.Y. Penal Law § 125.25(1).

In the case at bar, although there were no witnesses to the actual shooting, several witnesses testified that they had seen Davis, Lawton and Harris enter an alley together just before the shooting. Further, Simmons testified that, after he heard gun shots, he looked in the direction of the alley and saw sparks that he believed came from a gun. A ballistics expert testified that each time an automatic gun fires, a flash is visible at the end of the barrel and that the bullets recovered from Harris' head during the autopsy were fired by an automatic weapon.

Duwayne Harris testified that he had twice seen Davis collect money from his brother at or near the corner of West 146th Street and Amsterdam Avenue. Duwayne Harris also stated that, on the night of the murder, when Davis and Lawton arrived at that location, Harris entered into

17

conversation with Davis, and that all three men then disappeared for a "split second" into the alley between West 146th and West 147th Street. Duwayne Harris testified further that he saw his brother come out of the alley, then turn around and look back at Davis, who "gave him a nod." Duwayne Harris stated that his brother then went back into the alley with Davis and Lawton and that, about 20 seconds later, he heard five shots. He stated that he ran into the alley where he found his brother lying on the ground, that he started screaming and then ran for help. He stated further that he did not see anyone leave the alley after the shooting. On cross examination, Duwayne Harris acknowledged that he did not actually see anyone shoot his brother and that he never saw Davis with a gun in his hand.

Thereafter, as noted earlier, Alexander testified that, about an hour after the shooting, he saw Davis and Lawton give a sum of money to a man known only as Hotdog, who then walked to a trash receptacle from which he retrieved a plastic bag containing what appeared to be a gun. Alexander stated that Hotdog gave the bag to Davis, who then left the area with Lawton. On cross examination, Alexander acknowledged that he did not actually see a gun but, rather, the shape of a gun in the plastic bag.

The jury found, based on the evidence presented at the trial, that petitioner was guilty of murder in the second degree. The Appellate Division, which adjudicated this claim on the merits, concluded that there was no basis upon which to disturb the jury's determinations concerning the credibility of the witnesses who had testified at trial, and that the verdict was based on legally sufficient evidence and was not against the weight of the evidence. See Davis, 256 A.D.2d at 200, 683 N.Y.S.2d at 503. Petitioner has not presented clear and convincing evidence to this Court that rebuts the presumption of correctness accorded the jury's findings of

18

facts. Furthermore, the Court finds that the Appellate Division, in reviewing petitioner's conviction, applied the standard set forth in Jackson in finding that the evidence was sufficient for a reasonable jury to return a verdict of guilty against petitioner with respect to the crime of murder in the second degree.

Since the Appellate Division's determination was neither contrary to nor involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, there is no basis upon which to grant petitioner habeas corpus relief on this claim. Similarly, because the Court finds that the Appellate Division's adjudication did not result in a decision that was premised on an unreasonable determination of the facts in light of the evidence presented in the trial court, petitioner's claim that he is entitled to habeas corpus relief because his conviction for murder in the second degree was based upon insufficient evidence is without merit.

*Claim Six: Prosecutorial Misconduct*

Davis contends that the prosecution's misconduct during summation deprived him of his constitutional right to due process.[5] Specifically, with respect to the prosecutor's remarks on summation, Davis contends that the jurors were told, improperly, that: (1) they did not need evidence to find, beyond a reasonable doubt, that Davis was guilty of murder; and (2) Davis was on trial "because of what he did," a remark that effectively negated the presumption of innocence petitioner was due. In addition, Davis contends, the prosecutor argued a theory of accomplice liability although there was no evidence to support such a theory, and this departure from the

---

[5]Davis' other claims of prosecutorial misconduct – that the prosecution: (a) failed to dismiss the indictment while knowing that testimony put before the grand jury was perjurious; and (b) vouched for the credibility of witnesses known to have perjured themselves at trial were discussed earlier in this writing.

indictment deprived him of a fair trial.

Under federal law, an improper statement to a jury by a prosecutor will require reversal of a conviction only where the remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974). Furthermore, "the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." United States v. Young, 470 U.S. 1, 11-12, 105 S. Ct. 1038, 1044 (1985); see also Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) ("It is not enough that the prosecutors' remarks were undesirable or even universally condemned."). In determining whether a prosecutor's improper remarks prejudiced a defendant, a court should consider three factors: (1) the severity of the prosecutor's misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the improper statements. See, e.g., United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004).

The petitioner is correct that certain statements made by the prosecutor during summation were improper. However, in view of the measures taken by the trial judge to cure the misconduct, and the likelihood that the petitioner would have been convicted even in the absence of the prosecutor's improper statements, it does not appear that the conduct in question constituted prejudicial error.

During his summation, the prosecutor told the jury that "if you know he did it, you have no reasonable doubt[; t]hen there was evidence to reach that conclusion." In addition, the prosecutor told the jurors that Davis was "here [in the courtroom] because of what he did," and that the murder of Harris was a "two man job." In light of these comments, to which the defense

20

had objected, the trial judge addressed the jury immediately following the prosecutor's summation, in an attempt to cure any prejudicial effect. The trial judge explained to the jurors that the prosecutor was "[w]rong" in stating that "if you have . . . a belief, or feeling then there's evidence," and cautioned them not to form any conclusions until they had been instructed on the law. The court also admonished the prosecutor for suggesting to the jury that the defendant was "here because of what he did."

Thereafter, in instructing the jury on the law, the trial judge informed the jurors that the summations of counsel were not evidence, but only arguments which the jury was free to reject, and that the prosecutor's general remarks about "the drug world of West 146th Street after midnight" was not evidence and that they were not to speculate on the basis of such remarks.

With respect to petitioner's claim that the prosecution "improperly invit[ed] the jury to convict him of murder on the theory that he was acting as an accomplice to the person who fired the fatal shot," the Appellate Division found that "[t]he record reveals that [petitioner's] objections to this tactic were, in the main, sustained by the trial court." Davis, 256 A.D.2d at 201-202, 683 N.Y.S.2d at 503-504. The Appellate Division stated further:

We also note that New York criminal law draws no distinction between principal and accessorial liability. A defendant may be lawfully convicted as an accomplice to a crime where the indictment charges him as a principal. But here, prior to summations, the trial court explicitly rejected any submission to the jury of accomplice liability, and no reference was made to this jury option in the court's charge. We are satisfied, in light of the court's instructions, that the jury found defendant guilty of murder as a principal thereto.

Id.

Under the circumstances, it does not appear that the jury's verdict in this case turned on the challenged remarks by the prosecutor or, in light of the trial court's curative instruction, that

21

these remarks affected the jury's ability to weigh the evidence and apply the law. See Young, 470 U.S. at 12, 105 S. Ct. at 1045. Moreover, it does not appear that the Appellate Division's decision was contrary to, or applied unreasonably, the rule concerning prosecutorial misconduct set forth in the relevant Supreme Court case law or that it was based on an unreasonable determination of the facts in this case. Therefore, this claim is without merit.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that petitioner's application for a writ of habeas corpus be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard C. Casey, 500 Pearl Street, Room 1950, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Casey. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993);

Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York       Respectfully submitted,
       April 28, 2006

                              _Kevin Nathaniel Fox_
                              KEVIN NATHANIEL FOX
                              UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Brian Davis
Eleanor J. Ostrow, Esq.